**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| TRACY P.,[1]<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO, COMMISSIONER OF SOCIAL SECURITY,[2]<br><br>Defendant. | No. 25cv3379 (EP)<br><br>**OPINION** |

**PADIN, District Judge.**

Plaintiff Tracy P., who suffers from multiple physical and mental impairments, appeals the Social Security Administration's ("SSA") denial of his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act (the "Act").[3] D.E. 1 ("Complaint" or "Compl."). Plaintiff principally argues that Administrative Law Judge Timothy Belford (the "ALJ") found mild limitations in each of the four areas of mental functioning but failed to adequately explain why those limitations warranted no mental restrictions in Plaintiff's residual functional capacity ("RFC"). D.E. 13 ("Brief" or "Br.") at 10–18.[4] For the

---

[1] To protect the privacy interests of plaintiffs in social security cases, the Court adopts the recommendation of the Judicial Conference of the United States to refer to plaintiffs in social security cases by their first name and last initial. *Veronica D. v. Comm'r of Soc. Sec.*, No. 24-1326, 2025 WL 2665313, at *8 (M.D. Pa. Sept. 17, 2025).

[2] Frank Bisignano was sworn in as Commissioner of Social Security on May 7, 2025. Accordingly, Commissioner Bisignano has been substituted as the Defendant in this action pursuant to Federal Rule of Civil Procedure 25(d). *See* Fed. R. Civ. P. 25(d).

[3] 42 U.S.C. §§ 401–434, 1381–1383f.

[4] The Court decides the appeal without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b).

reasons explained below, the Court will **GRANT** the appeal, **VACATE** the SSA's denial, and **REMAND** for further proceedings consistent with this Opinion.

## I. BACKGROUND

### A. Plaintiff's Applications

Plaintiff protectively filed applications for DIB and SSI on December 7, 2021, alleging disability beginning March 5, 2020. D.E. 6 ("Administrative Record," "Record," or "R.") 17, 276–91. The SSA denied Plaintiff's claims initially on June 6, 2022, and upon reconsideration on December 20, 2022. *Id.* 17, 125–61. Plaintiff filed a written request for a hearing on January 3, 2023. *Id.* 162.

The ALJ initially convened a telephone hearing on August 23, 2023, but Plaintiff did not appear because he had gotten a new phone number and could not be reached. *Id.* 65–73, 245. The ALJ thereafter held a telephone hearing on January 4, 2024 (the "Hearing"), at which Plaintiff testified. *Id.* 36–56. James Sarno, an impartial vocational expert ("VE"), also appeared at the Hearing. *Id.*

On June 7, 2024, the ALJ issued a written decision denying Plaintiff's applications. *Id.* 14–29. The ALJ also determined that Plaintiff remained insured for DIB through March 31, 2025. *Id.* 18–19. Plaintiff requested review, and on March 6, 2025, the Appeals Council denied review. *Id.* 1–6. The ALJ's decision therefore became the Commissioner's final decision.

### B. The ALJ's Five-Step Sequential Evaluation Process

To qualify for DIB or SSI, a claimant must show that he is disabled within the meaning of the Act. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" that can be expected to result in death or that has lasted or can be expected to last for a continuous period of at least twelve months. *Id.* The impairment must be of such severity that

the claimant is not only unable to perform his previous work, but, considering his age, education, and work experience, cannot engage in other substantial gainful work that exists in the national economy. *Id.* §§ 423(d)(2), 1382c(a)(3)(B).

The Act establishes a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). Here, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 5, 2020, the alleged onset date. R. 19.

At step two, the ALJ decides whether the claimant has a "severe impairment" or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that Plaintiff had two severe impairments: (1) a spine disorder and (2) degenerative disc disease. R. 20. The ALJ found several of Plaintiff's other physical impairments non-severe, including hypertension, hyperlipidemia, gastroesophageal reflux disease, colonic diverticulosis, and benign prostatic hyperplasia. *Id.* 20–21.

The ALJ also found Plaintiff's medically determinable mental impairments of anxiety and alcohol use disorder non-severe. Applying the "paragraph B" criteria,[5] he found only mild limitations in each of the four areas of mental functioning: (1) understanding, remembering, or

[5] The "paragraph B" criteria are four broad functional areas of mental functioning that the ALJ evaluates to determine whether a claimant's mental impairment is severe. 20 C.F.R. §§ 404.1520a(c)(3), (d), 416.920a(c)(3), (d).

applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *Id.* 21–22. After considering the relevant opinion evidence, the ALJ concluded that those impairments, "considered singly and in combination," caused "no more than 'mild' limitation in any of the functional areas" and therefore did "not cause more than minimal limitation in the claimant's ability to perform basic mental work activities." *Id.* 21, 23.

The ALJ also evaluated several medical opinions bearing on Plaintiff's mental functioning. In March 2022, consultative psychologist Joyce A. Echo, Ph.D., examined Plaintiff and observed, among other things, concrete thinking, some suspiciousness and paranoia, a mildly expansive affect, limited insight, impaired delayed recall, and difficulty with abstract reasoning. *Id.* 569–71. Dr. Echo opined:

> The claimant has adequate auditory comprehension to understand simple and concrete instructions, but he would have difficulty in understanding novel and nuanced information. There are significant memory retrieval deficits and he would have difficulty recalling instructions a few minutes later. Basic attention is intact and he could do some simple, rote and routine tasks, but would have difficulty with multi-tasking demands. The claimant's mood issues, including reduced frustration tolerance, would lend itself to some potential interpersonal conflicts in the workplace.

*Id.* 571. The ALJ found Dr. Echo's opinion "unpersuasive." *Id.* 22. Although he acknowledged that Dr. Echo's examination findings supported her opinion, the ALJ concluded that the opinion was inconsistent with other records generally showing Plaintiff to be fully oriented and cooperative, with an appropriate mood and affect, clear speech, intact functional cognition, and normal judgment. *Id.*

The ALJ separately evaluated the prior administrative medical findings of state agency psychologists Ada Liberant, Psy.D., and Fred Eisner, Ph.D. Dr. Liberant assessed several moderate mental limitations, including limitations involving detailed instructions, attention and

concentration, and completion of a normal workday or workweek without psychological interruption. *Id.* 23, 77–80. Dr. Eisner assessed a limitation to simple tasks. *Id.* 23, 114–19. The ALJ found those findings only somewhat persuasive because, in his view, they relied heavily on Dr. Echo's examination and were inconsistent with Plaintiff's mostly normal mental status examinations. *Id.* 23. The ALJ concluded that the record supported mild rather than moderate paragraph B limitations. *Id.*

At step three, the ALJ determines whether the claimant's impairments meet or medically equal the severity of an impairment in the Listing of Impairments found at 20 C.F.R. pt. 404, subpt. P, app. 1.[6] 20 C.F.R. §§ 404.1520(d), 416.920(d). The ALJ considered Listing 1.15, concerning disorders of skeletal spine resulting in compromise of a nerve root, but concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." R. 23–24.

Before step four, the ALJ must determine the claimant's residual functional capacity ("RFC"), meaning the most the claimant can still do despite his limitations. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). Here, the ALJ found that Plaintiff "has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except [he] can do no more than occasional climbing, crawling, kneeling, and crouching." R. 24. The RFC therefore contained no mental restrictions.

At step four, the ALJ determines whether the claimant can perform his past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The ALJ found that Plaintiff "is capable of performing past relevant work as a security guard - gate guard (372.667-030), light exertion, SVP 3; and security guard - school (372.667-034), light exertion, medium exertion as performed, SVP 3." R. 27. He

[6] A "Listing" is an impairment in the Listing of Impairments.

further concluded that this work "does not require the performance of work-related activities precluded by the claimant's residual functional capacity." *Id.* After comparing the RFC with the physical and mental demands of the security work, the ALJ found Plaintiff able to perform it as generally performed and therefore found that Plaintiff "has not been under a disability" from March 5, 2020, through the date of the decision. *Id.* 27–28.

### C. Plaintiff's Appeal

Plaintiff commenced this action challenging the Commissioner's final decision. Compl. After the Commissioner filed the Record, Plaintiff filed his opening brief, Br., the Commissioner opposed, D.E. 17 ("Opposition" or "Opp'n"), and Plaintiff replied, D.E. 18 ("Reply").

Plaintiff raises two principal arguments. *First*, he argues that the ALJ improperly evaluated his mental impairments and, after finding mild limitations in all four paragraph B areas, failed to explain why no mental restrictions were included in the RFC. Br. at 10–18. Plaintiff emphasizes that Dr. Echo and the state agency psychologists all assessed restrictions associated with simple or unskilled work, yet the ALJ's RFC discussion contains essentially no analysis of what effect Plaintiff's acknowledged mental limitations have on his ability to work. *Id.* Plaintiff further argues that the omission of any mental restriction in his RFC is material because the VE testified that adding a limitation to simple and detailed job tasks would eliminate Plaintiff's semi-skilled security work. *Id.* at 18.

*Second*, Plaintiff challenges the ALJ's evaluation of the physical limitations assessed by his treating physician, Michel Mikhail, D.O. *Id.* at 18–23. Dr. Mikhail opined, among other things, that Plaintiff could stand or walk for less than one hour in an eight-hour workday, required an at-will sit/stand option, would be off task twenty-five percent of the workday, and would miss at least three days of work per month. R. 602–07. Plaintiff argues that the ALJ failed adequately to

evaluate the supportability and consistency of those restrictions under 20 C.F.R. §§ 404.1520c and 416.920c. Br. at 18–23; Reply at 1–4.

In sum, Plaintiff challenges the ALJ's evaluation of his mental impairments at step two and the RFC determination that informed step four. He does not separately challenge the ALJ's findings at steps one or three, and the ALJ did not reach step five. Based on the alleged errors at steps two and four, Plaintiff asks the Court to vacate the Commissioner's decision and remand this action for further proceedings. Br. at 23; Reply at 4.

## II. LEGAL STANDARD

Judicial review of an SSA determination is based upon the pleadings and the transcript of the record. 42 U.S.C. §§ 405(g), 1383(c)(3). The scope of review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence supporting the ALJ's factual findings. *See id.* § 405(g); *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).

Substantial evidence means "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995) (citation omitted). The standard is deferential, and the Court may not reweigh the record or substitute its conclusions for those of the ALJ. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).

Deference to the ALJ's fact-finding does not eliminate the requirement of reasoned decision making. The ALJ must provide enough discussion of the evidence and explanation of his reasoning to permit meaningful judicial review. *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119–20 (3d Cir. 2000). Findings must be accompanied by a "clear and satisfactory explication" of their basis, and probative evidence may not be rejected "for no reason or for the wrong reason."

*Cotter v. Harris*, 642 F.2d 700, 704, 706 (3d Cir. 1981). That explanatory obligation is particularly important when the record contains conflicting probative medical evidence. *Fargnoli v. Massanari*, 247 F.3d 34, 42–44 (3d Cir. 2001).

The Court reads the ALJ's decision as a whole. *See Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). The Court may not, however, cure a gap in the ALJ's reasoning by supplying its own analysis of evidence the ALJ did not rely on. *Fargnoli*, 247 F.3d at 44 n.7.

## III. DISCUSSION

Plaintiff's two challenges ultimately concern the RFC determination: whether the ALJ adequately assessed the work-related effects of Plaintiff's impairments. *See* Br. at 10–23. The Court concludes that the ALJ's treatment of Plaintiff's mental limitations requires remand. At step two, the ALJ expressly found that Plaintiff's mental impairments "do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore non-severe," while assessing a mild limitation in each paragraph B area: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. R. 21–23. But the RFC inquiry before step four is distinct from the ALJ's assessment of the paragraph B criteria, and the ALJ's decision does not adequately explain why those four mild limitations resulted in no mental restriction in the RFC. *Id.* 23–24.

*First*, the ALJ assessed the paragraph B criteria regarding Plaintiff's limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself, and found Plaintiff's mental impairments to cause "mild" limitations. *Id.* 21–22. After completing the paragraph B analysis, the ALJ expressly acknowledged those findings "are not a [RFC] assessment" and that determining Plaintiff's mental RFC required a "more detailed assessment." *Id.* 23. Nevertheless, when the

ALJ later formulated Plaintiff's RFC before step four, he did not separately explain the "more detailed" assessment of Plaintiff's mental functioning that he had acknowledged was required. *See id.* 23–27. Instead, he stated only that the RFC "reflects the degree of limitation" identified in the paragraph B analysis, *id.* 23, and ultimately adopted an RFC containing only physical restrictions and "no non-exertional limitations." *Id.* 24, 28.

*Second*, the absence of that explanation requires remand because the opinion evidence and the VE's testimony identify concrete mental limitations that could affect Plaintiff's ability to perform his past work. Specifically, Dr. Echo identified limitations involving memory, understanding more complex information, multitasking, and workplace interaction, while the state agency psychologists likewise assessed restrictions consistent with simple or unskilled work. *Id.* 77–80, 94–97, 569–71. The VE, moreover, testified that a limitation to simple and detailed job tasks would eliminate Plaintiff's past semi-skilled security work. *Id.* 50–51. Thus, even if the ALJ reasonably discounted those opinions and concluded that Plaintiff's limitations were only mild, the decision still needed to explain why the limitations that remained had no effect on his work-related mental functioning.

Because that missing analysis bears directly on the RFC and the dispositive step four finding, the Court cannot determine whether the ALJ would reach the same conclusion as to Plaintiff's ability to perform his past relevant work after properly assessing the functional effects of his mental impairments. Accordingly, the Court will **VACATE** and **REMAND** for further proceedings.

### A. The ALJ Did Not Adequately Account for Plaintiff's Mental Impairments in the RFC

The Court's concern is not the ALJ's ultimate step two classification of Plaintiff's mental impairments. Rather, it is the ALJ's failure to explain how the mild limitations he identified at

step two translated into an RFC containing no mental restrictions. Because the RFC does not meaningfully address the effect of Plaintiff's mental impairments, and that omission could affect the dispositive step four determination, remand is required.

Plaintiff filed his DIB and SSI claims after March 27, 2017, and therefore, the revised medical-opinion regulations apply. 20 C.F.R. §§ 404.1520c, 416.920c. Under those regulations, an ALJ does not defer or give controlling weight to any medical opinion. *Id.* §§ 404.1520c(a), 416.920c(a). Instead, the ALJ evaluates the persuasiveness of each medical opinion using several factors, of which "supportability" and "consistency" are the most important. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). Supportability focuses on the source's own objective medical evidence and supporting explanations; consistency focuses on how the opinion accords with evidence from other medical and nonmedical sources. *Id.* §§ 404.1520c(c)(1)–(2), 416.920c(c)(1)–(2). The ALJ must explain how both factors were considered. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2).

Separately, in formulating the RFC, the ALJ must consider the limitations imposed by all medically determinable impairments, including those found non-severe at step two. *Id.* §§ 404.1545(a)(2), 416.945(a)(2). Against that framework, the Court first explains why it need not decide whether the ALJ erred in finding at step two that Plaintiff's mental impairments were non-severe or in discounting the mental opinion evidence. The Court then addresses why, even accepting those findings, the ALJ did not adequately explain the absence of any mental restriction in the RFC and why that omission requires remand.

*1. The Court need not decide whether the mental impairments were severe at step two*

Plaintiff first challenges the ALJ's conclusion at step two that his mental impairments were non-severe. Br. at 10–15. The Court, however, does not need to resolve that question.

Step two is a threshold inquiry. An impairment is severe if it significantly limits a claimant's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). Where an ALJ finds at least one severe impairment and as a result proceeds through the remaining sequential evaluation, an erroneous failure to classify another impairment as severe may be harmless. *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007).

Here, the ALJ found Plaintiff's spine disorder and degenerative disc disease severe, but expressly concluded that Plaintiff's anxiety and alcohol use disorder "do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore non-severe." R. 20–21. Because the ALJ nevertheless proceeded through steps three and four, the more important question than whether he should have attached the label "severe" to Plaintiff's mental impairments is whether he adequately considered the functional consequences of those non-severe impairments when determining what Plaintiff could still do in a work setting.

Those are distinct questions. A finding that an impairment is non-severe at step two does not remove the impairment from the RFC analysis. The regulations expressly require consideration of "all" medically determinable impairments, "including [those] that are not severe," when determining RFC. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2) (quotations omitted). SSR 96-8p likewise instructs that the mental RFC determination requires a more detailed assessment than the broad paragraph B ratings used at steps two and three. SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996).

2. *The ALJ was not required to translate the paragraph B findings directly into RFC restrictions, but he was required to explain their impact on Plaintiff's RFC*

The paragraph B criteria are four broad areas of mental functioning used at steps two and three to assess the severity of a claimant's mental impairments: (1) understanding, remembering,

or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. §§ 404.1520a(c)(3), (d), 416.920a(c)(3), (d). Those findings inform the RFC analysis, but they are "not an RFC assessment" because "step four requires a more detailed assessment" of the claimant's ability to perform particular work-related mental functions. *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 209–10 (3d Cir. 2019). Thus, while an ALJ need not convert a paragraph B finding into a matching RFC restriction, he must still explain how the claimant's acknowledged mental limitations were accounted for in the RFC. *Ramirez v. Barnhart*, 372 F.3d 546, 555 (3d Cir. 2004) (rejecting argument that paragraph B findings "play no role in steps four and five").

In *Hess*, the Third Circuit explained that the paragraph B mental function rating used at steps two and three "will not necessarily translate to the language used at steps four and five," and that "[n]o incantations are required." 931 F.3d at 209. The court nevertheless emphasized that the ALJ must provide a "valid explanation" for the RFC selected. *Id.* at 213. The court held that the ALJ offered a valid explanation because the ALJ there connected the plaintiff's mental limitations to his activities, part-time work, mental status findings, and medical evidence. *Id.* at 213–15.

Accordingly, Plaintiff is incorrect to the extent he argues that every mild paragraph B finding must automatically produce a corresponding restriction in the RFC. *See Long v. Kijakazi*, No. 20-1358, 2022 WL 609620, at *6–8 (D. Del. Jan. 31, 2022). The correct question instead is whether the ALJ considered the acknowledged limitations and adequately explained the RFC ultimately adopted. *See Hess*, 931 F.3d at 209–15.

Courts applying *Hess* have likewise held that, although mild, non-severe mental limitations do not automatically require RFC restrictions, an ALJ must still explain why those acknowledged limitations do not warrant any mental limitation in the RFC. *See Gunn v. Kijakazi*, 705 F. Supp.

3d 315, 332–33 (E.D. Pa. 2023); *Maria A. v. Comm'r of Soc. Sec. Admin.*, No. 23-2484, 2024 WL 943466, at *6 (D.N.J. Mar. 5, 2024) (holding that the ALJ "failed to sufficiently consider and discuss [p]laintiff's non-severe mental impairments in making" the RFC finding); *Balla v. Comm'r of Soc. Sec.*, No. 18-386, 2019 WL 2482661, at *3 (D.N.J. June 14, 2019) (remanding for the ALJ to consider how the plaintiff's mental limitations impacted her RFC); *Curry v. Comm'r of Soc. Sec.*, No. 15-7515, 2017 WL 825196, at *5–6 (D.N.J. Mar. 2, 2017) (remanding because ALJ failed to "specifically consider or address" the impact of the plaintiff's mental impairments on her ability to work). Those decisions recognize that when an ALJ finds such limitations but adopts no corresponding mental restriction, the decision must provide enough reasoning to permit the Court to understand how the ALJ reached that result.

In *Gunn v. Kijakazi*, for example, the court rejected the categorical proposition that mild limitations necessarily require a mental RFC restriction, but concluded that an ALJ still must explain why the acknowledged limitations translate into no restriction. 705 F. Supp. 3d at 332–33. The court explained that a "boilerplate statement" that the RFC "reflects" the paragraph B limitations determined at step two, without a more detailed discussion of the effects of those findings, did not supply the "valid explanation" contemplated by *Hess*. *Id.* at 333.

Taken together, these cases establish the framework the Court applies here. Plaintiff's mild paragraph B limitations did not themselves compel corresponding mental RFC restrictions. But once the ALJ found those limitations, he was required to provide a sufficiently detailed explanation of their work-related effect and why they warranted no mental restriction in the RFC.

*3. The ALJ did not adequately explain why Plaintiff's mild mental limitations warranted no mental RFC restrictions*

The ALJ's step two analysis adequately explains why he found Plaintiff's mental impairments non-severe. He separately considered each paragraph B area, discussed Plaintiff's

statements and mental status findings, and evaluated the competing mental-opinion evidence. R. 21–23. He then concluded: "Because the claimant's medically determinable mental impairments cause no more than 'mild' limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, they are nonsevere." *Id.* 23. That explanation permits the Court to understand why the ALJ assessed mild rather than moderate limitations at step two.

However, the problem arises at the RFC stage. Immediately after the step two analysis, the ALJ recognized that "[t]he limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment" and that "[t]he mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment." R. 23. Before his step four analysis, the ALJ stated "[t]he following residual functional capacity assessment reflects the degree of limitation" found in the paragraph B analysis. *Id.* Yet the formal RFC finding was limited to "light work" with "no more than occasional climbing, crawling, kneeling, and crouching." *Id.* 24. Later, the ALJ characterized the "ultimate residual functional capacity" as "light exertional level, occasional postural activities, and no non-exertional limitations." *Id.* 28. Apart from a general statement that he considered "all symptoms" and a brief reference to Plaintiff's testimony concerning memory loss, the ALJ did not explain how the four mild paragraph B limitations translated into "no non-exertional limitations." *See id.* 24–28.

The ALJ's failure to explain how Plaintiff's step-two mental limitations affected his RFC is significant because the record contains medical opinions identifying specific limitations in those same areas of mental functioning. Dr. Echo identified significant memory retrieval deficits and difficulty with novel or nuanced information and multitasking, while opining that Plaintiff could perform simple, rote, and routine tasks and could experience workplace interpersonal conflicts.

*Id.* 571. Dr. Liberant assessed moderate limitations involving detailed instructions, sustained concentration, and completing a normal workday or workweek without interruption from psychological symptoms. *Id.* 77–80. Dr. Eisner likewise assessed a limitation to simple tasks. *Id.* 23. The ALJ was entitled to discount those opinions and conclude that the record supported only mild limitations. *Id.* 22–23. But finding a limitation mild rather than moderate does not, by itself, explain why the limitation has no effect on any work-related mental function.

In *Hess*, the ALJ did not merely identify a mental limitation and state that the RFC accounted for it. 931 F.3d at 213–15. The ALJ instead connected the claimant's activities, part-time work, mental status examinations, and medical evidence to the particular work restrictions selected. *Id.* By contrast here, there is no comparable analysis that connects the mild mental limitations the ALJ credited to the absence of any mental RFC restriction.

In response, the Commissioner points to cases recognizing that an ALJ may, in appropriate circumstances, assess mild paragraph B limitations without including a corresponding mental restriction in the RFC. Opp'n at 14–17. Those cases, however, do not dispense with the requirement that the ALJ provide enough reasoning to show how the acknowledged mental limitations were accounted for. *See Hess*, 931 F.3d at 209–15. That explanation is particularly important here because the record contains specific medical assessments of mental work restrictions and vocational testimony showing that such a restriction could affect Plaintiff's ability to perform his past relevant work.

In short, the problem here is that the ALJ did not adequately explain why the mild limitations he affirmatively found at step two resulted in no mental restriction at all. *See Gunn*, 705 F. Supp. 3d at 332–33; *Maria A.*, 2024 WL 943466, at *6–7. As shown below, that omission bears directly on the RFC and the step four determination, and therefore, remand is required.

### B. The Omission of Mental RFC Restrictions Was Not Harmless

The VE's testimony shows that the ALJ's failure to explain the omission of mental RFC restrictions could have changed the outcome of step four. The Court therefore cannot conclude that the error was harmless.

At the Hearing, the ALJ posed a hypothetical involving light work with occasional climbing, crawling, kneeling, and crouching, together with an ability to understand and carry out simple and detailed job tasks. R. 50. The VE responded that the hypothetical individual could perform the warehouse work but not Plaintiff's security work because the security occupations were semi-skilled. *Id.* When the ALJ asked why the added mental limitation would preclude Plaintiff's past security work, the VE explained that the security occupations were semi-skilled, required reasoning level three, and therefore exceeded the demands of the hypothetical. *Id.* The ALJ then removed the mental restriction and posed a second hypothetical limited to light work with occasional postural activities. *Id.* 50–51. Under that hypothetical, the VE testified that Plaintiff's past security work remained available.

The ALJ ultimately adopted an RFC containing only the physical restrictions from the second hypothetical and no mental limitations. *Id.* 23–27. In resolving Plaintiff's representative's vocational objection, the ALJ stated that "the evidence supports a residual functional capacity at the light exertional level, occasional postural activities, and no non-exertional limitations" and therefore "OVERRULED" the objection as moot. R. 28. Based on that RFC, the ALJ concluded that Plaintiff could perform his past security work as generally performed. *Id.* 27–28.

Thus, the unexplained conclusion that Plaintiff had "no non-exertional limitations" could have altered the step four finding that he could perform his past security work. R. 28. If, after performing the more detailed assessment required at the RFC stage, the ALJ concludes that Plaintiff's mental impairments warrant a restriction to simple or otherwise less complex work, the

step four determination may change. The Court cannot determine from the existing decision whether the ALJ would reach that conclusion, and the Court may not perform that fact-finding. *See Curry*, 2017 WL 825196, at *6.

The Commissioner emphasizes Plaintiff's testimony that he did not believe his head injury would prevent him from returning to his former work. Opp'n at 17; R. 46. That testimony is relevant, and the ALJ may rely on it when reassessing RFC. But it does not cure the absence of an explanation addressing the functional limitations the ALJ himself found and the conflicting opinion evidence concerning those functions. The ALJ must weigh that evidence and explain what restrictions, if any, follow from it.

### C. The Court Need Not Resolve Plaintiff's Challenge to Dr. Mikhail's Physical Opinion

Plaintiff separately argues that the ALJ inadequately evaluated Dr. Mikhail's May 2023 physical opinions. Br. at 18–23; Reply at 1–4. Dr. Mikhail assessed substantial restrictions, including less than one hour of standing or walking during an eight-hour workday, an at-will sit/stand option, twenty-five percent off-task time, and at least three absences per month. R. 602–07. The ALJ found those opinions unpersuasive because, although Plaintiff's spinal imaging supported a severe impairment, Dr. Mikhail's restrictions conflicted with examinations showing lumbar tenderness accompanied by full range of motion, full strength, and normal gait. *Id.* 27.

Plaintiff argues that this analysis did not sufficiently address supportability and consistency under 20 C.F.R. §§ 404.1520c and 416.920c. The Commissioner responds that the ALJ's decision, read as a whole, identified the limited support Dr. Mikhail supplied for his restrictions and compared those restrictions to contrary examination findings. Opp'n at 17–21. The Commissioner also relies on *Zaborowski v. Commissioner of Social Security*, which explains that an ALJ need

not repeatedly invoke the words "supportability" and "consistency" where those factors are adequately woven through the decision. 115 F.4th 637, 639–40 (3d Cir. 2024).

Because reconsideration of Plaintiff's RFC is already required, the Court need not decide whether the ALJ's treatment of Dr. Mikhail independently warrants remand. *See Vivaritas v. Comm'r of Soc. Sec.*, 264 F. App'x 155, 156–57 (3d Cir. 2008) (declining to reach additional challenges where further development of the record could render them unnecessary). The ALJ remains free on remand to reconsider Dr. Mikhail's opinions and the other physical opinion evidence as appropriate.

**D. The Court Will Remand for Further Proceedings**

Further proceedings, rather than an award of benefits, are appropriate. The Record contains normal mental status findings and limited mental health treatment, but also abnormal findings and medical opinions identifying limitations involving memory, concentration, task complexity, and workplace interaction. *See* R. 21–23, 77–80, 94–97, 569–71. Determining what work-related restrictions, if any, follow from that conflicting evidence is an administrative fact-finding task that the Court may not perform. *See Rutherford*, 399 F.3d at 552; *Cotter*, 642 F.2d at 704.

On remand, the ALJ should reassess the work-related effects of Plaintiff's mental impairments, including the mild paragraph B limitations already identified, and explain whether those limitations warrant any mental restrictions in the RFC. The ALJ should then formulate any revised RFC and obtain additional vocational testimony if necessary. Because that reassessment requires reconsideration of Plaintiff's RFC, the ALJ may also reconsider Dr. Mikhail's opinion and the remaining physical evidence as appropriate.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's appeal will be **GRANTED**, the Commissioner's denial of benefits will be **VACATED**, and the matter will be **REMANDED** to the SSA for further proceedings consistent with this Opinion. An appropriate Order follows.

Dated: September 9, 2026

Evelyn Padin, U.S.D.J.